UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| STACYE WILSON, | ) | |
| | ) | |
| | ) | Civil Action No. 5:07-217-JMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| LC MANUFACTURING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

** ** ** ** **

This matter is before the Court on Defendant's Motion for Summary Judgment on Liability [Record No. 14]. Plaintiff has filed a Response in opposition [Record No. 17]. The Court being adequately advised, this motion is now ripe for decision.

Stacye Wilson, a former employee and shift supervisor at LC Manufacturing, LLC (hereinafter, "LC Manufacturing"), complains that LC Manufacturing discriminated against her in the terms and conditions of her employment on the basis of her sex and race by subjecting her to a hostile work environment in violation of KRS 344.040 [Record No. 1].[1] Wilson also avers that her employment was

---

[1]

Wilson's Complaint alleges that she was a victim of discrimination (and, in turn, retaliation) on account of her race. Wilson, however, has presented no argument in support of this claim nor has she presented any evidence whatsoever of harassment or any adverse employment action on account of her race. Indeed, in a letter dated April 26, 2006, advising LC Manufacturing of her complaints of harassment, her counsel mentioned only complaints of

terminated in retaliation for her complaints about discrimination in violation of KRS 344.280 [Record No. 1].   Discovery is now closed, and LC Manufacturing asks this Court to grant summary judgment in its favor.   LC Manufacturing's motion is well-taken and shall be granted for the reasons which follow.

**I.   FACTUAL BACKGROUND**

   **A.   LC Manufacturing's Policy Against Harassment**

   At all times relevant to this lawsuit, LC Manufacturing had employment policies in place and an employee handbook which addressed sexual harassment and provided instructions on how to report harassment within the company. [Record No. 14-7, Exhibit to Affidavit of Sue Novakovich.]   Plaintiff Wilson was involved in updating the employee handbook in preparation for its distribution to employees at the LC Manufacturing facility where she was employed.   [Record No. 14-4, Transcript of February 20, 2008, Deposition of  Stacye Wilson (hereinafter, "Wilson Depo.") at 45-49.]   As a result, Wilson was actually aware of the proper procedures for reporting incidents of unwelcome harassment or discrimination within the company. [Wilson depo. at 68-69, 80-81.]

---

sex discrimination. [Record No. 14-9.] Further, her response to the motion under consideration by the Court states that she was subjected to a hostile work environment "solely due to her sex." [Record No. 17 at 7.] The Court understands that Wilson has, thus, abandoned any claim for relief for discrimination (or retaliation) on account of her race and shall dismiss these claims with prejudice.

**B.    Wilson's Allegations of Harassment**

Wilson maintains that during the course of her two years of employment at LC Manufacturing, she was subject to specific instances of sexual harassment by two coworkers, Rick Curran and Matt Cooper.[2]  [Record No. 1, Compl. at ¶ 8; Record No. 14-8, Stacye Wilson's Answers to Interrogatories and Requests for Production of Documents (hereinafter, "Ans. to Interr."), Ans. to Interr. No. 5.]  On occasion, Wilson would twist Curran's earlobe, and once, after she had done so, Curran made a twisting gesture with his hand and stated, "I'm going to tune your knobs."  [Wilson depo. at 77-78; Ans. to Interr. No. 5.]  Wilson shook her head, walked away, and neither responded to nor reported the incident to anyone at that time.  [*Id.*]  Wilson has also stated that Curran made unspecified comments about her breasts during the early part of her employment which she "chose to overlook."  [Ans. to Interr. No. 5.]

Nearly a year later, in May 2005, Curran commented to Wilson that she had a "pretty bra on."  [Wilson depo. at 67-69; Ans. to Interr. No. 5.]  When asked how he knew, Curran observed that he could see it through her blouse. [*Id.*]  Wilson has also stated that, during a conversation with another employee about the fact that mice were getting into her office, Curran theorized that the

---

[2]
Neither Curran nor Cooper served as Wilson's supervisors at LC Manufacturing at any relevant time.  [Wilson depo. at 53-54.]

3

mice were attracted to her office because she was so "hot."  [Ans. to Interr. 5.]

Plaintiff also complains that, during her tenure at LC Manufacturing, Cooper sent her an email called "Bug Booty," which showed "two bugs screwing."  [Wilson depo. at 74.]  During a company Christmas party in December 2005, Wilson has described how Cooper asked her to "take her jacket off and show them things," then asked her repeatedly to take off her jacket which she declined to do.  Cooper asked Wilson the next day, "What are you going to do with all that junk on your chest?"[3] [Wilson depo. at 69-71; Answer to Interr. No. 5].  In January 2006, Cooper grabbed the belt loop of Wilson's pants from behind and shook her.  [Wilson depo. at 74-74; Answer to No. 5.]  Wilson responded by elbowing him and walking away.  [*Id.*] In March 2006, Cooper commented on a short wig Wilson was wearing, calling it a "dyke wig," to which Wilson replied "there's nothing dyke about me."  [Wilson depo. at 78-79; Answer to No. 5.]

C.   **Wilson's Complaints to LC Manufacturing**

Although Wilson's allegations date back to March 2004, Wilson did not report any of these incidents to LC Manufacturing's human

---

[3]

Wilson believes that Cooper was paraphrasing a popular song from that time.  The Court assumes that Plaintiff refers to the Black Eyed Peas' song, "My Humps," which includes the lyric "What you gon' do with all that junk?  All that junk inside your trunk?" Black Eyed Peas, "My Humps" on *Monkey Business* (A&M Records 2005).

resources department or any of her superiors until March 2006,
following the comment about her wig. [Wilson depo. at 81, 90-91.]
Wilson informed Mark Kay, president and chief operating officer of
LC Manufacturing, that she had experienced sexual harassment at the
plant. [Wilson depo. at 87-88, 90-91; Novakovich Aff. at ¶ 3.]
Kay asked Human Resources Manager Sue Novakovich to visit the plant
to investigate the complaint. [Novakovich Aff. at ¶ 3.] When
Novakovich attempted to investigate the complaints, Wilson informed
Novakovich that her (Wilson's) attorney had told her not to talk to
Novakovich. [*Id.* at ¶ 4.] Novakovich informed Wilson that she was
required to continue investigating the complaints according to
company policy, whether or not Wilson chose to cooperate. [*Id.*;
*see also* Record No. 14-10.]

On March 21, 2006, Novakovich interviewed Wilson and was told
of the wig comment by Cooper and his comments at the Christmas
party, the belt loop and mouse incidents, and Curran's comment
about seeing Wilson's bra through her shirt.[4] [*Id.* at ¶ 5.] At

---

[4]

Wilson also complained that an employee in human resources,
Jason Shotwell, sent a "porno" email to co-worker John Houg, which
she saw on Houg's computer. [Novakovich Aff. at ¶ 5.] Wilson did
not feel that the emails themselves were themselves a form of
harassment, but she did feel that it was a reason that she could
not report sexual harassment to the human resources department.
[Wilson depo. at 79, 81, 85-86 and 119]. That said, the evidence
demonstrates that Wilson never intended to present her complaint to
to anyone at LC Manufacturing, whether at the local or national
level, prior to the report discussed herein. The evidence further
demonstrates that she felt that she could approach her former
supervisor, Roseberry and that, ultimately, she was comfortable

that time, Wilson informed Novakovich that she had never made a harassment complaint to anyone at LC Manufacturing prior to speaking with Mark Kay.[5]   [*Id.* at ¶¶ 9-10.]

Novakovich spoke to Matt Cooper concerning the allegations against him, which he denied.   Novakovich warned him that the company would not tolerate any type of retaliation against Wilson and gave him another copy of the Sexual Harassment Policy [*Id.* at 6.]  She also spoke to Curran about Wilson's allegations.   Curran denied telling Wilson that a mouse was in her office because she was "hot," rather stating that he told Wilson that mice were attracted to her office because it "was not warm, it was hot." Curran denied telling Wilson that she had on a pretty bra, reported that Wilson had been in his office, pulled his hair and twisted his ear.   Curran was told that the company would not tolerate any type of retaliation and given another copy of the Sexual Harassment policy.   [*Id.* at ¶ 8.]   Novakovich concluded that Wilson's allegations did not amount to severe or pervasive sexual harassment and noted that co-workers either denied the allegations or recalled

reporting her allegations of harassment to Mark Kay.

[5]

Wilson's attorney, Edward E. Dove, sent a letter to "Mr. Mike Spears, President" of LC Manufacturing, stating that he had been "retained by Ms. Stacy Wilson to inform you of a pattern of sexual harassment that [she has] been subjected to while employed in the Bourbon County location."   [Record No. 14-9.]   In the letter, dated April 26, 2006, Dove alleges that Wilson had been subjected to "unwelcome sexual comments and inappropriate touches," which "created a hostile work environment."   [*Id.*]

the incident from a perspective that could not be classified as sexual harassment. During her investigation, Novakovich took the opportunity to reinforce company policy against sexual harassment with each employee involved, the seriousness with which the company took all complaints, and reinforced with every employee involved that no retaliation would be tolerated. [*Id.* at ¶ 11.] At the conclusion of her investigation, Novakovich spoke again with Wilson and explained that she had spoken to the employees about whom Wilson had complained. Wilson was told to report to Novakovich any incident she felt was harassing and given instructions on how to contact Novakovich. Wilson was also provided another copy of the Sexual Harassment Policy. [*Id.* at ¶ 12.] There is no evidence that Wilson has claimed further instances of harassment following Novakovich's investigation.

### D.    Termination of Wilson's Employment

Plaintiff's report of harassment took place in the midst of some upheaval at the LC Manufacturing facility where Plaintiff worked. Her supervisor and plant manager, Phil Roseberry, was let go and new management brought in at the time she decided to raise her complaints. There were efforts among the employees to "unionize" the plant. The evidence tells the story of Plaintiff's difficulties as a supervisor during this time, when insubordination, rude words, and apparent discontent among Wilson's subordinates were rife. Ultimately, LC Manufacturing questioned

7

her effectiveness as a supervisor, and considering Wilson's relationships and interactions with her subordinates and the overall business conditions of the company, she was discharged from employment on July 11, 2006. [*Id.* at 18.] Wilson was offered a severance package which she refused [Wilson depo. at 112-13.] When she later applied for unemployment benefits, she reported the reason for her discharge as "the company was bought out and the management team was changed." [*Id.* at 113; Exh. 6.; *see also* Novakovich Aff. at ¶ 15.]

## II.  APPLICABLE STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). She "must set forth specific facts showing that there is a genuine issue," such that a jury could reasonably decide in her favor at trial. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

8

U.S. 242, 250 (1986)).  "When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of [her] claim, as in the present case, Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Edu.*, 106 F.3d 135, 145 (6th Cir. 1997).  Without such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party, but it "need not accept as true legal conclusions or unwarranted factual inferences." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Morgan v. Church's Fried Chicken*, 829 F.3d 10, 12 (6th Cir. 1987).

## III. DISCUSSION

Plaintiff Wilson cannot demonstrate that Defendant has violated either KRS 344.040 (by discriminating against her in the terms and conditions of her employment because of her sex and race) or KRS 344.280 (by retaliating against her for complaining about this alleged discrimination).  As explained in detail below, the evidence does not show (1) that the harassment she claims

9

unreasonably interfered with [her] work performance or created a hostile or offensive work environment that was severe and pervasive; (2) that LC Manufacturing knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and corrective action; or (3) that there was a causal connection between any protected activity and the termination of her employment.   Accordingly, her claims must fail, and summary judgment will be awarded in favor of Defendant LC Manufacturing.

**A.   Sexual Harassment**

The Kentucky Civil Rights Act's discrimination provisions (including KRS 344.040 and 344.280) "track [ ] federal law and should be interpreted consonant with federal interpretation" of Title VII.   *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814 (Ky. 1992); *see also Tiller v. University of Kentucky*, 55 S.W.3d 846, 849 (Ky. App. 2001).   Thus, in order to demonstrate a *prima facie* claim of a hostile work environment caused by co-worker sexual harassment under the Kentucky Civil Rights Act, Plaintiff must point to evidence sufficient to support a finding that:

> (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment unreasonably interfered with [her] work performance or created a hostile or offensive work environment that was severe and pervasive; *and* (5) [LC Manufacturing] knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and corrective action.

10

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999) (emphasis in original).

Accepting that Plaintiff can demonstrate (1) that, as a woman, she was a member of a protected class; (2) that she was subjected to unwelcome harassment; and (3) that at least some of the harassment complained of was based on sex, the Court is not persuaded that the undisputed facts demonstrate that "the workplace [at LC Manufacturing was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive [so as] to alter the conditions of [Wilson's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In reaching this conclusion, the Court has considered "'all of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" *Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Harris,* 510 U.S. at 23); *Ammerman v. Bd. of Edu. of Nicholas County*, 30 S.W.3d 793, 798 (Ky. 2000). The incidents described by Wilson were infrequent, isolated, and, when compared to other cases where a plaintiff showed the existence of a hostile workplace, are insufficient to make a prima facie showing of a hostile work environment because they do not support an objective finding of severe or pervasive harassment .

"Conduct that is merely offensive is not actionable." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" and, thus, cannot form the basis of a hostile environment discrimination claim. *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 788 (1998); *accord Ammerman*, 30 S.W.3d at 799; *see Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (supervisor's vulgar jokes, placement of vibrating pager on plaintiff's thigh, and pulling at plaintiff's overalls as if to look down them after plaintiff stated that she was wearing thong did not make prima facie showing of hostile work environment); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (several dirty jokes, a sexual advance, reference to plaintiff as "hot lips," and comments about plaintiff's clothing were not sufficient to establish an objectively hostile environment); *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000) (supervisor rubbing plaintiff's shoulder, grabbing plaintiff's buttocks, and issuing two sexually-laden invitations to join the supervisor in a whirlpool and swimming pool were not pervasive or severe harassment); *Burnett v. Tyco Corp.*, 203 F.3d 980, 984-85 (6th Cir. 2000) (incidents over six month period, which included vulgar remarks regarding the employee's virginity and clothing and

physically placing a pack of cigarettes under the plaintiff's shirt and brassiere strap did not establish a hostile environment); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826027 (6th Cir. 1997) (supervisors' jokes to plaintiff about "sticky buns" and "bosom," repeated references to an undeveloped parcel of land as "Hootersville," "Titsville," and "Twin Peaks," asking plaintiff if she had been seen dancing on a table in a biker bar on two occasions, and referring to plaintiff as a "broad" over a four-month period did not establish a hostile environment); *but see EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 508-09 (6th Cir. 2001) (prima facie showing of hostile workplace where supervisor grabbed employee's genitals on two separate occasions, stalked the employee several times a day, and where co-workers taunted employee repeatedly for making a complaint by grabbing and "hunching" on each other); *Randolph v. Ohio Dept. of Youth Servs.,* 453 F.3d 724, 734 (6th Cir. 2006) (prima facie showing of hostile workplace where plaintiff established that she was subjected to daily verbal sexual harassment by co-workers and multiple physical attacks, including rape).

Wilson complains of isolated comments by two co-workers over a two year period. The evidence presented to this Court reveals infrequent (not daily, weekly, or even monthly) conduct, best described as offensive utterances. Even if one construes Curran's singular statement that he would "tune [Wilson's] knobs" as a

threat, the evidence does not establish that he approached Wilson, attempted to touch any part of her body, or that Wilson believed that he would do so during the exchange.[6]  Wilson's receipt of an email from one of the co-workers which depicted mating insects is the only instance in which anyone otherwise referred to any sexual act in Wilson's presence.  Further, while one may reasonably find that it is humiliating to have reference made to parts of one's anatomy or undergarments at an employer-sponsored event or in the workplace and that comments about whether one is "hot" (and, apparently, attractive to mice) are also inappropriate, these comments were so isolated that one cannot reasonably conclude that these comments permeated Wilson's workplace with discriminatory intimidation, ridicule, and insult.[7]  Nor is there evidence that these comments were such that they created an objectively severe and pervasive environment of sexual harassment that a reasonable person would find hostile or abusive or which unreasonably

---

[6]

  Plaintiff has recounted a single instance in which Cooper grabbed her belt loop, presumably located at Wilson's waist, and shook her person.  This may constitute horseplay by Cooper but, without more, appears to have no sexual connotation.

[7]

  The Court notes that Wilson has made a great deal of Cooper's comment on her wig, but that comment does not support Wilson's claim that she was subject to harassment on account of being a woman.  In calling it a "dyke wig," Cooper appears to be making an off-color reference to sexual orientation.  Wilson certainly took the comment that way, as she responded "there's nothing dyke about me."  [Wilson depo. at 78-79; Answer to No. 5.]  As the Court understands Plaintiff's complaint, she raises no claim of discrimination on account of her sexual orientation.

14

interfered with Wilson's performance at work.[8] *Thornton v. Federal Exp. Corp.*, __ F.3d __, 2008 WL 2492280, 2 (6th Cir. June 24, 2008). Wilson's claim fails.

Further, even if the Court did consider the comments and actions of Wilson's co-workers sufficient to create an objectively and subjectively hostile environment, Wilson's claim would still fail. Assuming that a hostile work environment could be established, Wilson would still need to establish that LC Manufacturing is liable "because it knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action." *Hawkins*, 517 F.3d at 338. "[W]hen coworker harassment is at issue, an employer is not liable for 'mere negligence,' but is liable 'if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id.* (quoting *Blankenship v. Parke Care Ctrs.,*

---

[8]

Plaintiff has argued that sex discrimination is evidenced by an instance in which Cooper or Curran "undermined her supervisory authority" by rehiring an employee that Wilson had previously fired for attendance reasons, changes in procedures regarding employee absences and phone calls, failure to introduce her to a new staff member, instructions that the company grill was no longer available for personal use, and her perception that her subordinates began reporting problems to other managers instead of her. Plaintiff has provided no evidence that these incidents occurred because of her gender. *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605; *Pierce v. Commonwealth Life Ins. Co.*, 825 F.Supp. 787-88 (E.D. Ky. 1993) (requiring "cold, hard facts presented from which the inference" that sex was a factor "can be drawn.") In the absence of evidence of some actionable motivating animus, this Court declines to serve as a referree for such workplace conflicts. *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007).

*Inc.,* 123 F.3d 868, 872-73 (6th Cir.1997)).

It is undisputed that LC Manufacturing took prompt and appropriate corrective action when Wilson brought her complaints to its attention, nor has Wilson claimed that LC Manufacturing should have been aware of the alleged harassment prior to her first complaint to Kay in March 2006. LC Manufacturing's Human Resources Manager Novakovich was sent to perform an on-site interview with Wilson and to begin an on-site investigation immediately following Wilson's first report of harassment to Kay. [Novakovich Aff. at ¶ 5.] Novakovich first consulted Wilson, then interviewed all involved in the alleged harassment, including Curran and Cooper, and provided instructions on and copies of appropriate employment policies and issued warnings against retaliation. [*Id.* at ¶ 5-12.] There is no allegation that any incidents of harassment occurred after the conclusion of this investigation. In the absence of evidence that LC Manufacturing failed to take prompt or appropriate corrective action, after learning of the alleged harassment, Plaintiff's claim must fail.

**B.   No Evidence of Retaliation for Reporting Harassment**

Finally, Wilson cannot establish a *prima facie* case of retaliation as she has failed to present sufficient evidence of a causal connection between any protected activity and the

termination of her employment.[9] *Morris*, 201 F.3d at 792.  In order
"[t]o establish the causal connection . . . the plaintiff must
provide sufficient evidence from which one could draw an inference
that the employer would not have taken the adverse action against
the plaintiff had the plaintiff not engaged in activity that [the
Civil Rights Act] protects." *Abbott v. Crown Motor Co., Inc.*, 348
F.3d 537, 543 (6th Cir. 2003).  Temporal proximity alone will not
support an inference of retaliatory discrimination when there is no
other compelling evidence. *Arendale v. City of Memphis*, 519 F.3d
587, 606 (6th Cir. 2008) (fact that alleged retaliatory events
occurred two months after EEOC charge of discrimination not enough
to support causal connection in absence of other evidence); *Nguyen
v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Hafford v.
Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("loose temporal
proximity" created by employer's filing of disciplinary actions two
to five months after alleged protected activity "insufficient to
create a triable issue"); *Cooper v. City of North Olmstead*, 795
F.2d 1265, 1272 (6th Cir. 1986) (discharge four months after filing
discrimination claim insufficient to support prima facie case of

---

[9]
    Without a doubt, Wilson can establish the first three elements
of a prima facie case:  she participated in an activity protected
by Title VII when she complained of sexual harassment to her
employer, her exercise of that right was known to LC Manufacturing,
and she was the subject of an adverse employment action when her
employment was terminated, some four months after raising her
complaint. *See Morris*, 201 F.3d at 792.

retaliatory discharge).  Nor will a plaintiff's personal opinions and suspicions alone be sufficient to support a finding of liability without more.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) ("conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient'" to state a retaliation claim).

LC Manufacturing was placed on notice of Wilson's complaints of sexual harassment in March 2006, when Wilson informed Kay of the alleged harassment by her coworkers.  The suspension of her employment occurred in late June 2006 and was terminated in July 2006.  Wilson has offered no further evidence to support her claim that there exists a causal connection between her participation in protected activity and the adverse employment action taken by her employer.  The mere passage of three to four months from the time a complaint is lodged to an adverse employment action, without some further evidence, will not establish a causal connection between the two events.  It follows that Wilson has failed to present a *prima facie* case of retaliation, and there remains nothing for the jury to consider.  LC Manufacturing is entitled to summary judgment on Wilson's retaliation claim.

**IV.  CONCLUSION**

For all of the reasons set forth above, Wilson's claims of discrimination and retaliation fail.  LC Manufacturing is entitled to summary judgment, and all of Wilson's claims shall be dismissed.

Accordingly, it is **ORDERED**:

(1) that Defendant's Motion for Summary Judgment [Record No. 14] shall be, and the same hereby is, **GRANTED**;

(2)  that Plaintiff's claims against Defendant shall be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

This the 3rd day of July, 2008.



**Signed By:**

_**Joseph M. Hood**_

**Senior U.S. District Judge**

19